# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-60009-CIV-ALTMAN

**DENALDO FORBES**,

    *Petitioner,*

*v.*

**SECRETARY**, **DEPARTMENT
OF CORRECTIONS**,

    *Respondent.*

_____/

## ORDER

The Petitioner, Denaldo Forbes, is serving a thirty-year sentence in the custody of the Florida Department of Corrections for burglarizing a dwelling. He's now filed a habeas petition under 28 U.S.C. § 2254, challenging his state-court conviction and sentence. *See* Second Amended Petition [ECF No. 37]. After careful review—and for the reasons outlined below—we now **DISMISS** Ground Two of his Second Amended Petition as procedurally defaulted and **DENY** the remaining claims on their merits.

### THE FACTS

On April 27, 2012, the State of Florida charged Forbes and a codefendant, Jermaine West, by Information with three crimes: burglary of a dwelling (Count 1), grand theft (Count 2), and possession of burglary tools (Count 3). *See* Information [ECF No. 20-1] at 18–19. At trial, the State alleged that Forbes had directed West to enter the victim's home and steal "jewelry, watches, and miscellaneous property" worth $5,000.00 (or less). *Id.* at 18. Having heard the evidence, the jury found Forbes guilty on all three counts. *See* Verdict [ECF No. 20-1] at 85–87. That same day (August 20, 2014), the trial court sentenced Forbes to thirty years in prison (with a fifteen-year mandatory minimum) on Count

1 and 65.85 months on Counts 2 and 3—all to run concurrently. *See* Judgment and Sentencing Orders [ECF No. 20-1] at 89–101.

Forbes appealed his conviction and sentence to the Fourth DCA. *See* Direct Appeal Notice of Appeal [ECF No. 20-1] at 108. In that appeal, he advanced four arguments: (1) that "[t]he trial court erred by overruling [Forbes's] hearsay objections to out-of-court statements that a resident had seen a suspicious vehicle with three black males drive by"; (2) that the trial court erred by allowing the State to play a recording without "lay[ing] a proper predicate authenticating the recording"; (3) that the trial court erred by denying Forbes's motion for a judgment of acquittal, "where the evidence merely created a suspicion that Appellant was a principal to the crimes committed by Jermaine West and was insufficient to sustain Appellant's convictions"; and (4) that Forbes's sentence violated the rule set out in *Alleyne v. United States*, 570 U.S. 99 (2013), because "facts increasing the maximum penalty were not submitted to the jury nor proven beyond a reasonable doubt." Direct Appeal Initial Brief [ECF No. 20-1] at 125. On July 14, 2016, the Fourth DCA summarily affirmed the trial court in an unwritten opinion. *See Forbes v. State*, 197 So. 3d 53, 53 (Fla. 4th DCA 2016).

On December 26, 2016,[1] Forbes—now proceeding *pro se*—filed a state habeas petition directly with the Fourth DCA, alleging that his appellate counsel had been ineffective in the following six ways: (1) "counsel failed to raise on appeal that the trial court's burglary instruction to the jury was misleading and confusing," State Habeas Petition [ECF No. 20-1] at 258; (2) counsel "failed to raise or argue on appeal that the trial court had committed reversible error when instructing the jury on principal," *id.* at 261; (3) counsel failed to argue that "the evidence presented during the trial was insufficient to support the [charge] of burglary of a dwelling," *id.* at 262–63; (4) counsel failed to

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

contend on appeal "that the trial court committed reversible error when constructively amending the charging information," *id.* at 265; (5) "counsel failed to present the issue or argument that trial counsel was ineffective for failure to adequately object to or otherwise adequately challenge hearsay testimony offered by a state's witnesses," *id.* at 266; and (6) counsel failed "to move to strike the state's answer brief that referenced materials that was [sic] not brought out to the jury during trial," *id.* at 270. On February 24, 2017, the Fourth DCA denied Forbes's habeas petition in a one-sentence order. *See* Order Denying State Habeas Petition [ECF No. 20-2] at 37 ("ORDERED that the January 9, 2017 petition alleging ineffective assistance of appellate counsel is denied on the merits.").

Forbes then filed a FLA. R. CRIM. P. 3.850 motion for postconviction relief in state circuit court. *See* Postconviction Motion [ECF No. 20-2] at 39–65. The Postconviction Motion raised seven additional grounds for relief: (1) that trial counsel "failed to file a motion to suppress or otherwise challenge [the] State's evidence illegally obtained [sic], which was subsequent to an unlawful search of the Defendant's and alleged co-defendant's cell phone," *id.* at 43; (2) that trial counsel was ineffective for failing to object to "the trial court's burglary instruction on the basis of being misleading and confusing," *id.* at 49; (3) that trial counsel was ineffective for failing to "challenge the trial court's principal instruction on the basis of being misleading and confusing," *id.* at 51; (4) that trial counsel "failed to make an adequate argument for judgment for acquittal [regarding] the charge of burglary of a dwelling," *id.* at 53; (5) that trial "counsel failed to object or otherwise challenge the trial court's constructive amendment to the charging information," *id.* at 56; (6) that trial counsel failed to object to "hearsay testimony offered by [law enforcement] witnesses," *id.* at 57; and (7) that "the numerous errors described above . . . yielded a formidable cumulative and synergistic effect resulting in a trial that was unfair when the errors are considered in the aggregate," *id.* at 63.

The State filed a Response to Forbes's Postconviction Motion, arguing that "the Defendant's claims are without legal merit . . . and should be thus summarily denied." State's Postconviction

Response [ECF No. 20-2] at 82. On April 25, 2018, the state postconviction court denied all seven of Forbes's claims in a written order. *See* Order Denying Postconviction Motion [ECF No. 20-3] at 97–101.

Forbes appealed the denial of his Postconviction Motion to the Fourth DCA, contending that the state postconviction court erred in "summarily denying" his postconviction claims without "provid[ing] a valid legal rationale" or holding an evidentiary hearing. Postconviction Initial Brief [ECF No. 20-3] at 188–89; *see also* Postconviction Notice of Appeal [ECF No. 20-3] at 114. On February 28, 2019, the Fourth DCA affirmed the state postconviction court's order in an unwritten opinion. *See Forbes v. State*, 272 So. 3d 1275, 1275 (Fla. 4th DCA 2019). The Fourth DCA subsequently denied Forbes's motion for rehearing, *see* Order Denying Motion for Rehearing [ECF No. 20-3] at 238, and issued its mandate on July 12, 2019, *see* Postconviction Mandate [ECF No. 20-3] at 240.

Forbes filed his original § 2254 petition on January 2, 2020. *See* Petition [ECF No. 1]. Magistrate Judge Lisette M. Reid gave Forbes permission to file an Amended Petition on March 2, 2020. *See* Amended Petition [ECF No. 15]. Forbes then asked for leave to file a Second Amended Petition that would "reduce the number of grounds from 14 to 4," *see* Motion for Leave to Amend [ECF No. 36] at 3, which we allowed him to do over the Respondent's objections, *see* Order Granting Motion for Leave to Amend [ECF No. 44]. Forbes submitted his now-operative Second Amended Petition, along with an accompanying memorandum of law, on May 11, 2021. *See* Second Amended Petition [ECF No. 37]; Memorandum of Law [ECF No. 40].

## THE LAW

### I.    The Antiterrorism and Effective Death Penalty Act ("AEDPA")

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)). To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court doesn't articulate its reasons for the denial, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "'unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56 (quoting 28 U.S.C. § 2254(e)(1)).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (cleaned up).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* harmless-error standard requires habeas petitioners to prove that they suffered "actual prejudice." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012). As the Supreme Court recently explained, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht*'s actual-prejudice requirement. *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must satisfy *Brecht*, even if AEDPA applies. *See id.* at 1526 ("[O]ur equitable precedents remain applicable 'whether or not' AEDPA applies." (citing *Fry v. Pliler*, 551 U.S. 112, 121 (2007)). In short, a "federal court must

*deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Id.* at 1524 (emphasis in original); *see also Mansfield*, 679 F.3d at 1307 ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

## II.     AEDPA's Procedural Requirements

"[A] person in custody pursuant to the judgment of a State court" has one year to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). This limitations defense is, of course, waivable. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) (explaining that the State may express its intent to "waive the limitations bar").

Beyond meeting this one-year window, though, federal habeas petitioners must also *exhaust* their claims by "*properly* present[ing] [them] to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in original). Specifically, federal habeas petitioners must "fairly present every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fail[ed] to

'properly' present his claim to the state court—by exhausting his claim[ ] and complying with the applicable state procedure—prior to bringing his federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim." *Ibid.* In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan*, 526 U.S. at 848.

All that said, "[s]tates can waive procedural bar defenses in federal habeas proceedings, including exhaustion." *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) (cleaned up)). But "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); *see also McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (same).

### III.    Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). This same standard applies to alleged errors made by both trial counsel and appellate counsel. *See Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x 966, 979 (11th Cir. 2013) ("A claim of ineffective assistance of appellate counsel is evaluated under the same standard as for trial counsel.").

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315

(11th Cir. 2000) (en banc) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel could not have performed deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong (prejudice), "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

## ANALYSIS

Forbes asserts four grounds for relief. In Ground One, Forbes argues that appellate counsel "rendered ineffective assistance when counsel failed to move to strike [the] State's Answer Brief on the basis that the State referenced statements that [were] not brought out to the jury during the trial." Second Amended Petition at 4. In Ground Two, he claims that his trial counsel "fail[ed] to object to the improper introduction of video evidence," which led counsel to misadvise Forbes about the benefits of a curative instruction. *Id.* at 6–7. In Ground Three, he blames his lawyer for not objecting to the trial court's "misleading and confusing" burglary instruction. *Id.* at 9. Finally, in Ground Four, he castigates his lawyer for "fail[ing] to motion the court to suppress or otherwise challenge the evidence obtained from the cellular phones." *Id.* at 12.

The Respondent, unsurprisingly, takes a different view. It says that Grounds Two and Four "are unexhausted" and cannot be revived because "Petitioner cannot now return to state court to

exhaust these claims." Response to Order to Show Cause ("Response") [ECF No. 46] at 31.[2] And it insists that we can deny all four claims on the merits because Forbes "has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or was based on an unreasonable determination of the facts[.]" *Id.* at 51. Since the Respondent has not "waive[d] [its] procedural bar defenses," *Hills v. Washington*, 441 F.3d 1374, 1376 (11th Cir. 2006), we'll start by analyzing the extent to which Forbes has properly exhausted his claims. We'll then review any of the surviving claims on the merits.

## I.    Exhaustion

Under AEPDA, a § 2254 petition "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The Eleventh Circuit has clarified that exhaustion "has two essential requirements": (1) "a federal claim must be fairly presented to the state courts"; and (2) the petitioner "must take his claim to the state's highest court, either on direct appeal or collateral review." *Johnson v. Florida*, 32 F.4th 1092, 1096 (11th Cir. 2022) (cleaned up).

The Respondent pushes different exhaustion arguments for each of Forbes's claims. As to Ground Two, the Respondent says that "[Forbes] has never raised this claim in state court in any way, shape, or form." Response at 31. Forbes concedes this point. *See* Petition at 6 n.1. But, citing the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), he insists that "there is cause and prejudice to overcome the exhaustion requirement." *See* Petition at 6 n.1. Here, we agree with the Respondent (as we explain in some detail below). Ground Four, though, is another matter. This claim, the Respondent maintains, "was not properly exhausted [in Forbes's Postconviction Motion] since it

---

[2] The Respondent does concede, on the other hand, that all claims in the Second Amended Petition are timely. *See* Response at 30 ("Under 28 U.S.C. § 2244(d)(1) the time for filing Petitioner's claims does not appear to have expired."). And we'll accept that concession. *See Day v. McDonough*, 547 U.S. 198, 209–10 (2006) ("[A] district court is not required to doublecheck the State's math [for timeliness purposes].").

was procedurally barred under state law[.]" Response at 31. On this one, we disagree with the Respondent—for reasons we'll outline in a moment. Before we do, though, we'll briefly discuss Grounds One and Three—which Forbes has plainly exhausted.

### A. Grounds One and Three

The Respondent never suggests that Grounds One and Three are unexhausted. *See generally* Response. "However, the State's failure to raise exhaustion does not constitute a waiver under AEDPA, which mandates that '[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.'" *McNair*, 416 F.3d at 1304 (quoting 28 U.S.C. § 2254(b)(3)). Still, our independent review of these claims satisfies us that both have been properly exhausted.

Forbes raised the substance of Ground One—which challenges the effectiveness of his appellate counsel—in the habeas petition he filed under FLA. R. APP. P. 9.141(c) with the Fourth DCA. *Compare* State Habeas Petition [ECF No. 20-1] at 270 ("[A]ppellate counsel failed to move to strike the state's answer brief that referenced materials that was [sic] not brought out to the jury during trial."), *with* Second Amended Petition at 4 ("Appellate counsel rendered ineffective assistance when counsel failed to move to strike State's answer brief on the basis that the State referenced statements that was [sic] not brought out to the jury during trial."). And Ground Three appears to be virtually identical to the claim Forbes advanced in "Omission Two" of his Postconviction Motion. *Compare* Postconviction Motion at 49 ("Defendant submits that counsel failed to object to or otherwise challenge the trial court's burglary instruction on the basis of being misleading and confusing[.]"), *with* Second Amended Petition at 9 ("Counsel failed to object to or otherwise challenge the trial court's burglary instruction on the basis of being misleading and confusing[.]"). When the Postconviction Motion was denied, Forbes appealed that ruling to the Fourth DCA, *see Forbes*, 272 So. 3d at 1275, where he raised the very same argument he now presses in Ground Three, *see* Postconviction Initial

Brief [ECF No. 20-3] at 200 ("[C]ounsel was ineffective in failing to object to the court's burglary instruction as it was misleading and confusing."). Because "the state's highest court" had "a full and fair opportunity to resolve [these] federal constitutional claims," *O'Sullivan*, 526 U.S. at 845, we'll consider the merits of Grounds One and Three.

### B. Ground Four

Forbes has also exhausted Ground Four. In contending that Ground Four "was not properly exhausted," Response at 31, the Respondent acknowledges (as it must) that Forbes included what's now Ground Four in his Postconviction Motion, *see* Postconviction Motion [ECF No. 20-2] at 43 ("Counsel failed to file a motion to suppress or [otherwise] challenge evidence subject to an unlawful search of a cell phone."). Nevertheless, the Respondent asks us not to review Ground Four on the merits because "it was procedurally barred under state law because Petitioner lacked standing to raise the issue." Response at 31. We disagree.

It's true that a claim is defaulted if the state postconviction court "decline[s] to address the claim based on an independent and adequate procedural ground under state law[.]" *Kimbrough v. Sec'y, Fla. Dep't of Corr.*, 809 F. App'x 684, 689 (11th Cir. 2020). But this independent-and-adequate-state-ground doctrine only applies when "a state court has declined to address those claims because the prisoner had failed to meet a state *procedural* requirement." *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (cleaned up & emphasis added). In its written order disposing of Ground Four's state-court antecedent, the state postconviction court found that "[t]he Defendant's claim is pure speculation and refuted by the record. Additionally, Defendant lacks standing to challenge the search of the codefendants' cell phones." Order Denying Postconviction Motion [ECF No. 20-3] at 97–98. As these two sentences make plain, the state postconviction court denied the claim—essentially a Fourth Amendment claim about the data police recovered from his cellphone—on the merits. And, while the state court did say that Forbes lacked "standing" to challenge the search of his coconspirators' phones,

Fourth Amendment standing is a *merits* question—not a procedural or jurisdictional bar. *See Presley v. United States*, 895 F.3d 1284, 1290 (11th Cir. 2018) ("And unlike Article III standing, standing under the Fourth Amendment is not jurisdictional; instead, we analyze it as a merits issue."). Because the state postconviction court denied Ground Four on the merits, the independent-and-adequate-state-ground doctrine doesn't bar Forbes from reraising that claim here.

### C. Ground Two

The parties agree that Forbes has never raised Ground Two before. *See* Second Amended Petition at 6 n.1; Response at 31. Forbes, though, asks us to excuse this procedural default because (he says) he's satisfied the "cause and prejudice" exception the Supreme Court carved out in *Martinez*. *See* Second Amended Petition at 6 n.1. The Respondent disagrees and argues that *Martinez* doesn't apply because Forbes was not "truly obstructed or impeded in raising his claim of ineffectiveness of trial counsel merely because he lacked postconviction counsel to help him file a postconviction motion." Response at 38–39.

A habeas petitioner can survive a procedural default if he can show *either* "cause and prejudice" *or* "actual innocence." *See Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense."). "Cause and prejudice" requires the petitioner to establish that (1) "some objective factor external to the defense impeded the effort to raise the claim properly in the state court," and (2) "there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). "Actual innocence," on the other hand, requires the petitioner to make "a

credible showing" of new evidence that would make it "more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin v. Perkins*, 569 U.S. 383, 394–95 (2013) (cleaned up).[3]

The *Martinez* exception Forbes relies on implicates the doctrine of "cause and prejudice." In *Martinez*, the Supreme Court held that, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17. Put another way, under *Martinez*, a habeas petitioner can show "cause" under the "cause and prejudice" test when: "(1) a state requires a prisoner to raise ineffective-trial-counsel claims at an initial-review collateral proceeding; (2) the prisoner failed to properly raise ineffective-trial-counsel claims in his state initial-review collateral proceeding; (3) the prisoner did not have collateral counsel or his counsel was ineffective; and (4) failing to excuse the prisoner's procedural default would cause the prisoner to lose a 'substantial' ineffective-trial-counsel claim." *Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1260 (11th Cir. 2014).

Florida law "requires that ineffective assistance claims generally be raised on collateral review," *Sullivan v. Sec'y, Fla. Dep't of Corr.*, 837 F.3d 1195, 1199 (11th Cir. 2016), and it's undisputed that Forbes didn't have a lawyer at his postconviction proceedings in state court, *see* Memorandum of Law at 8; Response at 39. For two reasons, though, the Respondent says that *Martinez* doesn't apply here. *First* (the Respondent says), although Forbes was unrepresented in his postconviction proceedings, he

---

[3] We won't address the "actual innocence" exception here. Forbes, after all, doesn't allege that he's "actually innocent," and he hasn't offered any "reliable evidence not presented at trial such that it is more likely than not that no reasonable juror would have convicted him of the underlying offense." *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012) (cleaned up). Because Forbes has failed to argue that he's "actually innocent," he cannot use that exception to excuse his procedural default. *See, e.g.*, *Renford v. Dixon*, 2022 WL 2046849, at *6 (S.D. Fla. June 7, 2022) (Altman, J.) ("Renford doesn't argue that he's actually innocent of the charges against him. Nor does he point to any 'new evidence' that might support a contention that he is. That's pretty much the end of that." (cleaned up)).

didn't ask the postconviction court to appoint counsel for him, and he hasn't shown (the Respondent believes) that his ability to raise a meritorious postconviction claim was frustrated by his lack of counsel. *See* Response at 40–41 ("[A] habeas petitioner should not be able to elect to represent himself and then claim his lack of counsel is the cause of his failure to raise a claim in state court, especially where the petitioner had no trouble raising multiple other claims."). *Second*, the Respondent claims that Ground Two "lacks merit and is thus not a substantial claim which requires the excusal of the procedural bar." *Id.* at 38. Because we agree that Ground Two *doesn't* allege a "substantial ineffective-trial-counsel claim," *Martinez* doesn't apply.[4]

*Martinez*'s "substantial claim" standard is identical to the "already-developed standard for issuing a [certificate of appealability]"—*i.e.*, the petitioner "must make a substantial showing . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269–70 (11th Cir. 2014) (cleaned up). A claim is not "substantial" under this standard "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." *Id.* at 1270 (cleaned up). Ground Two falls far short of meeting this rigorous standard.

In Ground Two, recall, Forbes alleges that, during his trial, the State presented the video of a police interview, in which Forbes implied that he'd been incarcerated before. *See* Second Amended

---

[4] The Respondent's first argument is intriguing, but we don't think there's enough legal support for us to adopt it. It may well be that "Petitioner's failure to exhaust Ground Two . . . is not due to the fact that he lacked postconviction counsel, or due to the fact that he was not perfectly capable of proceeding without counsel." Response at 41. And it's true that Forbes "does not explain why he needed the aid of counsel to help him raise the issue." *Ibid.* Still, Forbes is right that *Martinez* itself doesn't seem to require habeas petitioners to prove that they tried (and failed) to find counsel on collateral review. *See* Reply [ECF No. 49] at 3–4 ("Respondent wishes to alter the standards set by *Martinez* by requiring Petitioner to at least have requested counsel. *Martinez* simply does not require that."). And the Respondent's reliance on *Cannon v. Trammell*, 796 F.3d 1256 (10th Cir. 2015), is misplaced. Unlike Forbes, the petitioner in *Cannon* "insisted on proceeding pro se," even after the state postconviction court appointed a lawyer to represent him. *Id.* at 1266. Having thus "refuse[d] the assistance of counsel," the *Cannon* petitioner couldn't deploy his *pro se* status to avail himself of *Martinez*'s exception. *Ibid.*

Petition at 7; *see also* Trial Tr. [ECF No. 21-1] at 326 ("[Detective:] You know the system very well, okay? Do your friends know that you have been in prison; yes or no? The Defendant: Yeah."). It's undisputed that defense counsel responded to this video by moving *immediately* for a mistrial. *See* Trial. Tr. [ECF No. 21-1] at 327 ("I would ask for a mistrial based on that, Your Honor. I think it's too prejudicial and the jury heard it."); *id.* at 328 ("My recommendation [to Forbes] is to move for a mistrial."). According to Forbes, though, counsel pushed him to accept a curative instruction instead of a mistrial and told him "that if he does not win [at] trial he could still appeal the issue." Second Amended Petition at 7. Forbes now says this was bad advice. *See ibid.* ("The Petitioner did not understand the ramifications of mistrial or not. . . . [C]ounsel [incorrectly] told the Petitioner that this issue would be available for appellate review."). And (he adds) this bad advice was the *only* reason he agreed to forgo a mistrial in favor of a curative instruction. *See id.* at 8 ("If not for counsel's advice, the Petitioner would have insisted on moving for a mistrial. Petitioner's decision was solely based on what Counsel told him.").

This claim isn't "substantial" because Forbes's allegations are *fully* contradicted by the record. The trial transcript makes clear that, as soon as the State played this video, defense counsel *immediately* objected and moved for a mistrial—saying that the reference to a prior term of incarceration was "too prejudicial and the jury has heard it." Trial Tr. [ECF 21-1] at 326–27. The court then excused the jury and gave Forbes a chance to talk the matter over with his lawyer. *See id.* at 327 ("We're going to be in recess 10 minutes, so you all can be prepared to make your argument."). After this brief recess, counsel told the court that his "recommendation is to move for a mistrial. I explained it to [Forbes]. That doesn't mean he goes free, it means we have to do it all over again." *Id.* at 328. Under oath, Forbes said that he "would like to have more time" to discuss the mistrial issue with his counsel. *Id.* at 329. After another short break, defense counsel told the court:

Your Honor, I've had more time to talk to my client. We've discussed the mistrial issue. I've explained to him other options of a curative instruction and if he would like to proceed forward with the trial.

*I obviously would like a mistrial. He would like to move forward with the trial.* If the Court issued a very stern curative instruction, basically saying that the testimony on the video, the video interrogation of the defendant. The video by the officer is not required to tell the truth. The officer is interrogating him. There's no evidence before the Court he was ever in prison. It's a common technique to say something that isn't true.

*Id.* at 329–30 (emphasis added).

The court then discussed the matter with Forbes, who was still under oath. The ensuing colloquy went like this:

The Court: First I want to know—take it one step at a time—your desire, or wish, to move this Court for a mistrial at this time?

The Defendant: No.

The Court: Do you wish to go forward?

The Defendant: Yes.

The Court: Now, are you doing this freely and voluntarily?

The Defendant: Yes.

The Court: Has anyone threatened or coerced you to make this decision?

The Defendant: No.

The Court:  You're thinking clearly today?

The Defendant: Yes.

The Court: I'm going to find that he's making a knowing and freely and voluntary waive [sic] for a motion for mistrial.

*Id.* at 331. When the jurors returned, the judge gave them the curative instruction Forbes had asked for: "[A]ny statements," the court said, "made by the police interrogator is not to be considered by you jurors as evidence of the defendant's guilt," because "the statements made by the police interrogator during the interrogation of the defendant may be false and misleading." *Id.* at 342.

This colloquy easily disposes of Forbes's *Martinez* claim. Contra Forbes's position here, defense counsel unambiguously told the court that *he* wanted to move for a mistrial, but that *Forbes* was insisting on going forward with a curative instruction. *See id.* at 329 ("I obviously would like a mistrial. [Forbes] would like to move forward with the trial."). In other words, counsel did what any competent lawyer would've done: apprise the client of his options, explain the costs and benefits of each, and allow the client to decide which road to take. *See* Trial Tr. [ECF No. 21-1] at 329 ("I've had more time to talk to my client. We've discussed the mistrial issue. I've explained to him other options of a curative instruction and if he would like to proceed forward with the trial."). The objective record thus conclusively belies Forbes's assertion in Ground Two, which is that *counsel* led him to accept a curative instruction over a mistrial. *See* Second Amended Petition at 8 ("If not for counsel's advice, the Petitioner would have insisted on moving for a mistrial. Petitioner's decision was solely based on what Counsel told him."). Indeed, when the court put Forbes under oath and asked him whether he wanted to move for a mistrial, Forbes said: "No." Trial Tr. [ECF No. 21-1] at 331. And, when the court asked him whether he wanted to "go forward" with the trial, he answered: "Yes." *Ibid.* In the world of habeas corpus, there are no take-backs. *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("[T]he sworn representations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.").

In any event, even if counsel had opted not to ask for a mistrial on his own, that decision—"to refrain from asking the court for a mistrial"—is "a tactical decision entrusted to counsel," which, as a practical matter, we almost never second-guess. *United States v. Burke*, 257 F.3d 1321, 1324 (11th Cir. 2001); *see also Brewster v. Hazel*, 913 F.3d 1042, 1057 (11th Cir. 2019) ("Of course, counsel can for reasonable strategic reasons refrain from making a valid objection or moving for relief . . . if there are reasonable strategic reasons for not objecting or moving.").

Nor could Forbes show that the decision to proceed with a curative instruction *prejudiced* him. *Cf. Harris*, 874 F.3d at 688 ("Federal review of a procedurally defaulted claim is available if a petitioner can show both cause for the default *and actual prejudice resulting from it*." (emphasis added)). A defendant is prejudiced only when "there is at least a reasonable probability the result of the proceeding would have been different if he had been allowed to raise the issue in state court." *Ledford v. Warden, Ga. Diagnostic Prison*, 975 F.3d 1145, 1161 (11th Cir. 2020) (cleaned up). Forbes cannot show prejudice for two reasons. *First*, there's no indication that the trial judge would've granted the mistrial motion. In fact, all indications are that the judge would have reserved ruling on the mistrial motion until *after* the jury had rendered its verdict. *See* Trial Tr. [ECF No. 21-1] at 329 ("I'm going to reserve, Mr. Shulz, until the verdict comes back—actually, I don't know that yet. Let me see what you have decided."). And there's no reason to believe that, once the jury convicted Forbes, the judge would have granted that motion and thrown out the verdict. *Second*, Forbes doesn't explain how the curative instruction could have prejudiced his case given Florida's "well-established presumption that juries follow trial court instructions[.]" *Sutton v. State*, 718 So. 2d 215, 216 (Fla. 1st DCA 1998). And, since we presume that the jury followed the judge's instruction—in which the judge forbade the jurors from considering the officer's statement about Forbes's prior incarceration—no mistrial was necessary. *See Love v. State*, 259 So. 3d 23, 52 (Fla. 2018) ("Moreover, in the absence of evidence to the contrary, we presume that jurors follow the trial court's instructions."). There's thus no "reasonable probability" that the failure to pursue a mistrial had *any* effect on the outcome of Forbes's trial.

Because Forbes hasn't shown either "cause" or "prejudice," Ground Two is procedurally defaulted and must be **DISMISSED**.[5]

---

[5] Normally, when a habeas petition includes both exhausted and unexhausted claims, we must "either dismiss the petition, or grant a stay and abeyance to allow the petitioner to exhaust the unexhausted claims[.]" *Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007) (cleaned up). But we don't need to consider a stay "when the claims raised for the first time at the federal level can no longer be litigated on the merits in state court because they are procedurally barred." *Kelley v. Sec'y for Dep't of Corr.*, 377

## II.     The Merits

We turn, then, to the merits of Grounds One, Three, and Four. AEPDA rather strictly circumscribes our review of "any claim that was adjudicated on the merits in State court proceedings[.]" 28 U.S.C. § 2254(d). In resolving the remaining claims, therefore, we ask only whether the state court's decision "involved an unreasonable application of[ ] clearly established federal law" or "was based on an unreasonable determination of the facts[.]" *Ibid.* The highest state court to pass on the merits of Grounds Three and Four was the Fourth DCA, which affirmed the state postconviction court's denial of both claims in an unwritten opinion. *See Forbes*, 272 So. 3d at 1275. Since the Fourth DCA didn't provide us with an independent analysis, we must "look through the unexplained decision to the last related state-court decision that does provide a relevant rationale," *Wilson*, 138 S. Ct. at 1192, which is the state postconviction court's order denying Forbes's Postconviction Motion, *see* Order Denying Postconviction Motion [ECF No. 20-3] at 97–101.

The Fourth DCA also disposed of Ground One in an unwritten decision. *See* Order Denying State Habeas Petition [ECF No. 20-2] at 37 ("ORDERED that the January 9, 2017 petition alleging ineffective assistance of appellate counsel is denied *on the merits*." (emphasis added)). But, because Forbes brought that claim to the appellate court in the first instance, no other state court provided a "relevant rationale" on that claim. Still, we can apply § 2254(d)'s standard of review when, as here, "a state court's decision is unaccompanied by an opinion explaining the reasons relief has been denied," because we presume "that the state court adjudicated the claim on the merits in the absence of any

---

F.3d 1317, 1351 (11th Cir. 2004). Forbes can no longer raise Ground Two in a state postconviction motion because Florida's two-year window for him to bring a Rule 3.850 motion closed in August of 2018. *See* FLA. R. CRIM. P. 3.850(b) ("No other motion shall be filed or considered pursuant to the rule if filed more than 2 years after the judgment and sentence become final[.]"); *see also* Direct Appeal Mandate [ECF No. 20-1] at 248 (establishing that Forbes's state-court conviction became final on August 12, 2016).

indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 98–99. That presumption makes sense in our case because the Fourth DCA, as we've seen, disposed of Ground One "on the merits." Order Denying State Habeas Petition [ECF No. 20-2] at 37.

At this stage, then, Forbes bears the "burden [ ] to demonstrate that there was no reasonable basis for the decision of [the state court] to deny his claim[s]." *Tarleton v. Sec'y, Fla. Dep't of Corr.*, 5 F.4th 1278, 1291 (11th Cir. 2021); *see also, e.g., Pierre v. Dixon*, 2022 WL 3549781, at *8 (S.D. Fla. Aug. 18, 2022) (Altman, J.) ("[W]e apply § 2254(d)'s heightened standard to the appellate-counsel claims and, in doing so, grant Pierre relief only if he can show that there was no 'reasonable basis' for the state court's decision.").

## A. Ground One

In Ground One, Forbes alleges that his appellate counsel was ineffective for not moving to "strike [the] State's Answer Brief on the basis that the State referenced statements that was [sic] not brought out to the jury during the trial." Second Amended Petition at 4. Ground One arises from a recording the State played during Forbes's trial. The recording captured an inculpatory conversation between Forbes, his codefendant (West), and a third suspect (Jerald Perry) in the back seat of a police vehicle. *See generally* Recording Tr. [ECF No. 20-1] at 46–55. According to Forbes, the State had two transcripts of this recording: the first (shorter) transcript, prepared by a court reporter, "transcribed the recording as it was played to the jury"; the second, however, included additional portions of the recording "that the jury never heard." *Ibid.*

While the case was on direct appeal, the State filed a motion in the Fourth DCA "to reconstruct and supplement the record on appeal" with the second transcript. Second Amended Petition at 4; *see also* Motion to Reconstruct/Supplement Record on Appeal [ECF No. 20-1] at 156–62. And, again, it's this second transcript that purportedly included "evidence that was not presented to the jury." Second Amended Petition at 4. Although the Fourth DCA denied the State's motion, *see*

Order Denying Motion to Reconstruct/Supplement Record [ECF No. 20-1] at 170, Forbes claims that the State still filed an Answer Brief that contained "over 47 references of statements that were not within the Court Reporter's certified transcripts included in the Record on Appeal," Second Amended Petition at 4.

The Respondent concedes that "the State liberally cited to statements by the three co-conspirators which were caught on an audiotape in the police car." Response at 63. But it insists that the State didn't "cite to any portion of the recording that was not played to the jury." *Ibid.* To substantiate this argument, the Respondent invites us to compare the State's Answer Brief [ECF No. 20-1] at 172–225, the shorter trial transcript [ECF No. 21-1] at 352–55, a (longer) transcript of the recording that was given to the jury as a demonstrative aid [ECF No. 20-1] at 46–55, and a CD that contains the entire recording the jury heard [ECF No. 26]. Forbes, for his part, agrees that we should engage in this comparison. *See* Reply at 5 ("Petitioner urges this Court to do just that. Compare.").

And so, we did. We listened to the recording on the CD. *See* Notice of Conventional Filing (CD) [ECF No. 26]. And we compared what we heard to both transcripts: the one the jury saw as a demonstrative aid (the longer transcript), *see* Demonstrative Aid Tr. [ECF No. 20-1] at 45–55, and the one that was prepared by the court reporter during the trial (the shorter transcript),[6] *see* Trial Tr. [ECF No. 21-1] at 352–55. We then compared those two transcripts to the 47-or-so references the State made to the recording in its Answer Brief. *See* Direct Appeal Answer Brief [ECF No. 20-1] at 188–96. And here's what we found: The CD, the longer (demonstrative) transcript, and the State's Answer

---

[6] This version of the transcript—which is just a part of the overall trial transcript—is significantly shorter than the demonstrative transcript the jury was given as an aid to help them follow along as the recording was played. Reviewing the record, it seems clear to us that this discrepancy arose because this shorter transcript simply reflects what the court reporter was able to understand (and transcribe) of the recording in real time during the trial. Given the degree of difficulty associated with that task, much of this transcript simply says: "Unintelligible." Indeed, at one point, rather than transcribe what she was hearing, the court reporter wrote: "A lot of whispering going on. Unable to tell who is speaking or what is being said." Trial Tr. [ECF No. 21-1] at 353.

Brief are all consistent; the first two (the CD and the demonstrative aid) basically encapsulate the *whole* conversation from the backseat of the police car, and the Answer Brief cites liberally from that conversation. As we've said, however, the version of this conversation that appears in the trial transcript is a lot shorter and includes only a very small part of the overall recording. *Compare* Trial Tr. [ECF No. 21-1] at 352–55, *with* Demonstrative Aid Tr. [ECF No. 20-1] at 46–55. Forbes has pounced on this inconsistency, declaring that the shorter conversation reflected in the trial transcript is the only true indication of what the jury *actually* heard. *See* Reply at 5 ("The trial Judge never directed the stenographer to stop transcribing at any point during trial. Therefore, her transcripts are the complete version of what the jury heard.").

But that's just not true. Looking at *other* parts of the trial record, in fact, we can see clearly that the jury heard the *full* recording—and that they were shown the *full* transcript of that recording as a demonstrative aid—even if the court reporter, operating in real time, was only able to understand (and transcribe) *some portions* of that recording. So, for instance, in her closing argument, the prosecutor several times quoted statements Forbes had made in the recording. Forbes, the prosecutor said, (1) proclaimed that "[t]he only thing that links me is the tire iron," (2) chastised West for thinking that Forbes had left because "[w]e're waiting on this money, bitch," and (3) instructed West "to take this rap for us." Trial Tr. [ECF No. 21-1] at 400–02. Although these parts of the recording *don't* appear in the shorter version of the conversation that's reflected in the trial transcript, *see generally id.* at 352–55, they're all on *both* the CD *and* the longer transcript the jury used as a demonstrative aid while the recording was being played, *see* Demonstrative Aid Tr. [ECF No. 20-1] at 49 ("[Forbes:] What the fuck we leaving you for, man. We waiting on this money bitch."); *id.* at 51 ("[Forbes:] You got to take the charge. You feel me?"); *id.* at 54 ("[Forbes:] [T]he guy told her that you used a stool to break the

window first and then used the tire iron. So the tire is what link [sic] me.").[7] None of these references would've meant anything to the jury *unless the State had played the whole recording*. And we know that the jury heard the whole recording because neither Forbes's lawyer, nor the judge, nor Forbes himself had any problem with the prosecutor quoting, in closing, from a recording that, if Forbes's version of events is true, the jury would never have heard. *See generally* Trial Tr. [ECF No. 21-1] at 399–403 (showing no objections to the prosecutor's repeated quotations from the recording).

Two more things on this: *One*, on direct appeal, the parties quibbled over the quality of the shorter version of the backseat conversation that was included in the trial transcript. During that fight, the State observed that the *whole* recording "was played during a detective's testimony," but it lamented that "the court reporter *did not fully transcribe the tape itself*; large portions of the playback were simply marked 'unintelligible.'" Motion to Reconstruct/Supplement Record [ECF No. 20-1] at 157 (emphasis added) (quoting Trial Tr. [ECF No. 21-1] at 351–55). The State's recommendation was *either* to "order reconstruction of the record through the preparation of a second trial transcript" *or* to have the record "supplemented with a copy of the transcript that was provided to the jury below [*i.e.*, the Demonstrative Aid Transcript]." *Id.* at 158, 160. Although Forbes's appellate counsel objected to this request, he did so *only* on the ground that "the motion [is] a waste of taxpayer money, an unnecessary delay of the appeal, and ultimately an unnecessary extension of Appellant's prison sentence." Response to Motion to Reconstruct/Supplement Record [ECF No. 20-1] at 164. Forbes's lawyer, in other words, maintained that supplementing the record with the demonstrative-aid transcript was unnecessary because the Fourth DCA could simply listen to the recording—the obvious implication being that the jury had heard *everything* that was on that recording. *See id.* at 166 ("There is a CD of the

---

[7] As we've indicated, the jury received a copy of the longer transcript *before* the recording was played. *See* Trial Tr. [ECF No. 21-1] at 350–51 ("Q: Now, Detective, . . . was a transcript made of the recording as well? A: Yes, it was. . . . [Prosecutor:] Your Honor, permission to give a copy of the transcript to the jury? The Court: Okay.").

recording in the appellate record. . . . [T]he CD is used to resolve any transcript problems—a second transcript is not used to resolve problems and thus is unnecessary.").

*Two*, the Fourth DCA has already rejected this claim "on the merits," Order Denying State Habeas Petition [ECF No. 20-2] at 37, so our review is necessarily limited to the discrete question whether the Fourth DCA's ruling "was based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2). And, given everything we've said already, we think it eminently reasonable for the Fourth DCA to have believed that the jury heard the *whole* recording.

While we took a somewhat meandering road to get here, the long and short of it is that there was nothing wrong with the State's Answer Brief. The jury heard *the whole* recording of the conversation between Forbes and his coconspirators in the back of the police car. And the State cited to that recording in its Answer Brief. We thus cannot blame appellate counsel for having failed to raise a meritless objection to those citations. *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."). Ground One, in sum, is **DENIED**.[8]

## B. Ground Three

In Ground Three, Forbes blames his trial counsel for not objecting to what he characterizes as a "misleading and confusing" burglary instruction. Second Amended Petition at 9. Forbes identifies two problems with the trial court's burglary instruction. *First*, he claims that the instruction shouldn't have included the "act is committed clause" because he wasn't "charged with being armed in the course of the burglary." *Ibid. Second*, he contends that the instruction deviated from Florida's burglary

---

[8] Even if counsel's performance had been deficient, Ground One would still fail because Forbes has failed to allege that he was prejudiced by these citations to the recording. Forbes says only that "[t]he appellate court most likely relied on the State's brief in its determination to affirm Petitioner's judgment of conviction." Second Amended Petition at 5. But this speculation about what exactly the appellate court might've relied on is plainly insufficient to sustain Forbes's claim. *See Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner[.]").

statute by falsely suggesting that a person's intent can be determined "at the end of entering the structure" rather than "at the time of entering the structure." *Id.* at 10.

In denying this claim, the state postconviction court observed that "the Defendant was given the standard jury instruction for burglary" and found that, under Florida law, counsel cannot perform deficiently when he "'fails to object to a standard jury instruction that has not been invalidated by [the Florida Supreme Court].'" Order Denying Postconviction Motion [ECF No. 20-3] at 98 (quoting *Griffin v. State*, 866 So. 2d 1, 15 (Fla. 2003)). And, while the trial court *had*, in reading the instruction to the jurors, accidentally used the phrase "at the end of entering the structure," this error was (the postconviction court found) harmless because the *written* instructions the jury received used the right phrasing: *viz.*, "at the time of entering the structure[.]" *Ibid.* This was a reasonable application of federal law.

The burglary instruction the jury received was *identical* to Florida's standard jury instruction for burglary offenses. *Compare* Jury Instructions [ECF No. 20-1] at 61–62, *with* FLA. STD. JURY INSTR. (CRIMINAL) § 13.1. Under Florida law, "standard jury instructions are presumed correct," *Brown v. State*, 11 So. 3d 428, 432 (Fla. 2d DCA 2009)—meaning that counsel *cannot* be ineffective for failing to object to a standard instruction *unless* the Florida Supreme Court had invalidated that instruction *before trial*, *see Boone v. State*, 311 So. 3d 955, 958 (Fla. 1st DCA 2020) ("Counsel cannot be ineffective for failing to object to a standard jury instruction that has not been invalidated."); *see also Griffin*, 866 So. 2d at 15 ("[I]t is not deficient performance when counsel fails to object to a standard instruction which has not been invalidated by this Court.").[9]

---

[9] We also agree with the state postconviction court that, by providing the jury with complete (and accurate) *written* instructions, the trial judge rendered harmless any error she made in her oral presentation of those instructions. *See Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 779 (11th Cir. 2003) ("[W]e conclude that the complete written instructions . . . rendered the error in the trial court's oral instructions harmless."), *abrogated on other grounds by Hedgpeth v. Pulido*, 555 U.S. 57 (2008); *see also Polls v. State*, 134 So. 3d 1068, 1070 (Fla. 4th DCA 2013) ("[W]e acknowledge that replacing the word 'processing' with the word 'possessing' in the oral instruction on 'manufacture' resulted in an incorrect

Forbes doesn't allege that the burglary instruction the trial court gave had previously been invalidated by the Florida Supreme Court. *See generally* Second Amended Petition. And "Florida precedent indicates that trial counsel's failure to object to standard jury instructions that had not been invalidated by the Florida Supreme Court do not render counsel's performance deficient." *Conrad v. Sec'y, Fla. Dep't of Corr.*, 663 F. App'x 746, 753 (11th Cir. 2016). Ground Three is therefore **DENIED**.

### C.  Ground Four

Finally, in Ground Four, Forbes avers that counsel was ineffective for failing to "file a motion to suppress or object to evidence derived from an unlawful search of a cell phone." Second Amended Petition at 11. Here, Forbes appears to suggest that police officers illegally searched his cellphone the day *before* they obtained a warrant for the contents of that phone. In support, Forbes claims that, on the day he was arrested, "Officer Percival filed a probable cause affidavit in which he specifically stated that . . . 'cell phones *indicated* that codefendant West was calling and speaking with the cellular phone inside Forbes['s] vehicle as they sat two blocks away during the burglary.'" *Ibid.* (emphasis in original). This "admission," Forbes insists, proves that the officers searched his phone on the day he was arrested (which was one day *before* they got their warrant). *See id.* at 11–12.

The state postconviction court found that "Defendant's claim is pure speculation and refuted by the record" because the subsequent cellphone warrant was based, *not* on any illegal search of Forbes's phone, but on "the hidden recording device in the vehicle where the three codefendants discussed phone calls made to one another during the burglary." Order Denying Postconviction Motion [ECF No. 20-3] at 97–98. This conclusion was reasonable.

The surreptitious police-cruiser recording established that Forbes, West, and Perry were using their cellphones to communicate with one another before and during the burglary. *See, e.g.,*

definition of a disputed element of the crime. However, given that the written jury instructions were correct, we do not believe that fundamental error occurred merely because the trial court misstated a single word while orally instructing the jury.").

Demonstrative Aid Tr. [ECF No. 20-1] at 53–54 ("[Forbes:] . . . them phone calls. You feel me? [West:] Yet they got your number, too. [Forbes:] Yeah, you called but on my phone off . . . you feel me? So I'm telling them man, my phone is off man. I don't, I don't know nothing about no phone calls man."). Officer Percival's affidavit (the same one Forbes relies on) also indicated that West admitted to the burglary and that Forbes "admitted knowing West." Probable Cause Affidavit [ECF No. 20-1] at 16. In other words, when they reviewed the backseat recording, the officers *already knew* that the defendants were using their cellphones to coordinate the burglary. *See* Response at 86 ("[T]he record shows that the reason Percival wrote that the phones 'indicated' [was] because 1) all three co-conspirators had phones in their possession when they were detained, 2) Perry was talking on his phone when he was detained, 3) Petitioner had admitted to a detective on April 5, 2012, that Perry and West were talking to each other by phone, and 4) the secretly taped conversation between [the codefendants] on April 5, 2012, revealed that West had been communicating with Perry by phone during the burglary[.]"). They thus didn't need to search Forbes's phone illegally to secure that information.

But here's the thing: Even if the officers had illegally searched Forbes's phone before they got the warrant, the phone's contents would have been admissible at trial under the doctrine of "inevitable discovery." As we just discussed, law enforcement had, without searching the phone, probable cause to suspect that Forbes had used his cellphone to facilitate the burglary. Because the contents of Forbes's phone "would have been discovered by lawful means," *United States v. Johnson*, 777 F.3d 1270, 1277 (11th Cir. 2015), the exclusionary rule wouldn't have barred their admission at trial, *see ibid.* ("Officer Gregory's investigation of the truck began before, and was independent of, his illegal search. Subtract the illegal search from the factual picture in this case and nothing of substance would have changed." (cleaned up)), *overruled on other grounds by United States v. Watkins*, 10 F.4th 1179 (11th Cir. 2021) (en banc); *United States v. Taro*, 2016 WL 3059542, at *6 (M.D. Fla. May 31, 2016) (Dalton, J.)

("Here the prosecution adequately demonstrated that it was actively pursuing an investigation of Defendant . . . . Moreover, the evidence shows that the Agents would have obtained a search warrant with particularized reference to cell phones based on [previous statements].").[10]

We therefore **DENY** Ground Four.

## EVIDENTIARY HEARING

We won't hold an evidentiary hearing in this case. "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Based on what we've said—including and especially the presence of a robust trial and state-postconviction record—we don't think we'd benefit from any further factual development.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of

---

[10] Citing *Townsend v. Sain*, 372 U.S. 293 (1963), Forbes asks us to hold an evidentiary hearing to determine "what Deputy Percival meant when he wrote 'cell phones indicated'" in his probable-cause affidavit. Reply at 8–9. But *Townsend* is an outdated precedent that precedes, by more than three decades, the passage of AEDPA, which authorizes us to hold an evidentiary hearing *only* if the petitioner identifies *either* "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," or "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A); *see also Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022) (clarifying that an evidentiary hearing should only be granted when the petitioner demonstrates "that further factfinding would demonstrate, by clear and convincing evidence, that no reasonable factfinder would have convicted him of the crime charged"). Forbes hasn't even tried to meet this rigorous standard here—probably because there's nothing new about Officer Percival's affidavit. Indeed, Forbes seems to concede that the affidavit has been available to him since *before* his criminal trial. The whole point of Ground Four, after all, is that, despite knowing about Deputy Percival's affidavit, Forbes's lawyer didn't move to suppress the cellphone evidence *before* the trial. *See* Postconviction Motion [ECF No. 20-3] at 63 ("Officer Percival's Affidavit clearly reveals that the Broward County Sheriff Department conducted an examination of the cellular phones before obtaining a search warrant. Thus, any information obtained (and then used during trial) subsequent to the illegal search . . . was subject to suppression. Trial counsel failed to motion [sic] the Court to suppress or otherwise challenge the evidence obtained from the cellular phones.").

the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Jurists of reason wouldn't find debatable our decision to dismiss Ground Two as procedurally defaulted. Nor would "reasonable jurists" disagree with our decision to deny Grounds One, Three, and Four on the merits. We thus **DENY** any request for a COA.

***

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Second Amended Petition is **DISMISSED** as to Ground Two and **DENIED** as to Grounds One, Three, and Four. Any request for a COA is **DENIED**, any request for an evidentiary hearing is **DENIED**, all deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on November 18, 2022.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     Denaldo Forbes, *pro se*
        counsel of record