UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60009-CIV-ALTMAN

**DENALDO FORBES**,

    *Petitioner*,

*v*.

**SECRETARY, DEPARTMENT
OF CORRECTIONS**,

    *Respondent*.

_____/

## ORDER

Our Petitioner, Denaldo Forbes, filed a four-claim habeas petition under 28 U.S.C. § 2254, challenging the constitutionality of his state-court conviction and sentence. *See* Second Amended Petition [ECF No. 37]. We dismissed Ground Two of the Petition as procedurally barred and denied the remaining three grounds on their merits. *See Forbes v. Sec'y, Dep't of Corr.*, 2022 WL 17082912, at *1 (S.D. Fla. Nov. 18, 2022) (Altman, J.). Forbes has now filed a "Motion to Alter or Amend Judgment" under FED. R. CIV. P. 59(e), challenging our decision to deny Ground One and dismiss Ground Two of the Second Amended Petition. *See* Motion to Amend [ECF No. 53].[1] Two problems with this. *One*, the Motion to Amend is untimely under Rule 59(e). *Two*, even if we were to reconstrue the Motion to Amend as a timely motion under FED. R. CIV. P. 60(b), Forbes still wouldn't be entitled to relief. We therefore **DENY** the Motion to Amend.

## THE LAW

A party may file "[a] motion to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). "The only grounds for granting a Rule 59 motion are

---

[1] The Motion to Amend never mentions our decision to deny Grounds Three and Four. *See generally* Motion to Amend.

newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (cleaned up); *see also Eveillard v. Nationstar Mortg. LLC*, 2015 WL 1191170, at *5 (S.D. Fla. Mar. 16, 2015) (Bloom, J.) (noting that "an intervening change in controlling law" may serve as a basis for Rule 59 relief). As a result, parties "cannot use a Rule 59(e) motion to relitigate old matters, raise argument[s] or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005); *see also Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998) ("The purpose of a Rule 59(e) motion is not to raise an argument that was previously available, but not pressed.").

A losing party may also file a post-judgment motion under Rule 60(b), which offers relief from a final judgment if the movant can show mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, or "any other reason that justifies relief." FLA. R. CIV. P. 60(b)(1)–(6). But Rule 60(b) is an extraordinary remedy, and "disagreement with the Court's ruling is an insufficient basis for reconsideration of a prior order." *Martes v. Sacco*, 2011 WL 13272347, at *1 (S.D. Fla. Apr. 7, 2011) (Dimitrouleas, J.). Like Rule 59(e), Rule 60(b) is "not a vehicle for rehashing arguments the Court has already rejected or for attempting to refute the basis of the Court's earlier decision." *Ibid.* (quoting *Lamar Advertising of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 490 (M.D. Fla. 1999)). The rule requires that the moving party "demonstrate a justification for relief so compelling that the district court is required to grant the motion." *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012) (cleaned up); *see also Enax v. Goldsmith*, 322 F. App'x 833, 835 (11th Cir. 2009) ("Relief under Rule 60(b) is an 'extraordinary remedy which may be invoked only upon a showing of exceptional circumstances.'" (quoting *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001))).

**ANALYSIS**

**I.        Timeliness**

Before we can reach the Motion's merits, we must determine whether it's timely. The final order Forbes challenges was entered on November 18, 2022. But Forbes didn't give this Motion to prison officials for mailing until January 2, 2022. *See* Motion to Amend at 1; *see also Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) ("Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.").[2] The unambiguous text of Rule 59(e) requires that a motion to alter or amend judgment "must be filed no later than 28 days *after the entry of judgment*." FED. R. CIV. P. 59(e) (emphasis added). Since we entered the order Forbes is here challenging on November 18, 2022, he had until 28 days after that (or December 16, 2022) to file his Rule 59(e) motion. Because Forbes gave prison officials his Motion to Amend about two weeks *after* December 16, 2022, his Rule 59 motion is untimely.[3]

---

[2] The Motion to Amend's "certificate of service" indicates that Forbes gave it to prison officials for mailing on December 28, 2022. *See* Motion to Amend at 12. As we'll soon see, however, the Motion is untimely under Rule 59(e), whichever date we use.

[3] Seemingly anticipating this problem, Forbes says that he didn't receive a copy of our final order until December 2, 2022. *See* Motion to Amend at 1 n.1 ("Mr. Forbes received this Court's Order Denying and Dismissing his § 2254 Habeas Petition [on] December 2, 2022."). But this fact doesn't change our timeliness analysis for two reasons. *One*, the text of Rule 59(e) clearly states that the time to file a motion to alter or amend is based on when the final order was *entered*, not on when the petitioner receives a copy. *See* FED. R. CIV. P. 59(e) ("A motion to alter or amend judgment must be filed no later than 28 days after the entry of the judgment."); *see also Scott v. Palmer*, 2014 WL 6685813, at *2 (E.D. Cal. Nov. 26, 2014) (Oberto, Mag. J.) ("While there may be some delay inherent in the receipt of mail in an institutional setting, the prison mailbox rule, by its very terms and underlying policies, does not apply to Plaintiff's receipt of incoming mail . . . and does not affect the date of legal service of documents on Plaintiff." (citing *Hernandez v. Spearman*, 764 F.3d 1071, 1074–76 (9th Cir. 2014))).

*Two*, even if we started the 28-day clock on December 2, 2022, that clock still would have expired on December 30, 2022—*i.e.*, three days *before* Forbes gave the Motion to prison officials on January 2, 2023. *See* Motion to Amend at 1. Forbes *could*, it's true, rely on the certificate of service to prove that he actually delivered the Motion to prison officials on December 28, 2022. But the Motion is marked with an institutional stamp (which Forbes himself initialed), confirming that it was received by prison officials on January 2, 2022. *See id.* at 1. And the law is clear that, where there's a conflict between the date on the certificate of service and the date on the institutional stamp, the latter controls. *See Cole v. McNeil*, 2010 WL 1757945, at *2 n.5 (N.D. Fla. Apr. 1, 2010) (Davis, Mag. J.) ("In the *absence*

Fortunately for Forbes, "[a]n untimely Rule 59(e) motion is properly treated by the district court as a Rule 60(b) motion to vacate the judgment[.]" *Jones v. S. Pan Servs.*, 450 F. App'x 860, 862 (11th Cir. 2012) (citing *Mahone v. Ray*, 326 F.3d 1176, 1177 n.1 (11th Cir. 2003)). "The grounds for granting a Rule 60(b) motion to vacate are (1) mistake or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by an opposing party; (4) void judgment; (5) satisfied judgment; or (6) any other reason that justifies relief." *Id.* at 863. Since the express purpose of Forbes's Motion to Amend is to "afford[ ] the district court the opportunity to rectify mistakes that affected its decision," Motion to Amend at 1, we'll reconstrue the Motion as one under Rule 60(b)(1), which allows us to correct any "mistake, inadvertence, surprise, or excusable neglect," FED. R. CIV. P. 60(b)(1); *see also Kemp v. United States*, 142 S. Ct. 1856, 1862 (2022) ("Thus, as currently written, 'mistake' in Rule 60(b)(1) includes legal errors made by judges.").

## II.   Ground One

With timeliness out of the way, we now turn to the merits of Forbes's Motion. In Ground One, Forbes argued that "his appellate counsel was ineffective for not moving to strike the State's Answer Brief on the basis that the State referenced statements that [were] not brought out [to] the jury during the trial." *Forbes*, 2022 WL 17082912, at *11 (cleaned up). In short, Forbes insisted that the State had improperly cited portions of an audio recording the jury hadn't heard—meaning that, in Forbes's view, the state appellate court considered evidence that wasn't presented at trial. *See ibid.* ("Forbes claims that the State still filed an Answer Brief that contained over 47 references [to] statements that were not within the Court Reporter's certified transcripts included in the Record on Appeal." (cleaned up)). In our original order, we rejected this first argument because we found that the State properly cited to the whole audio recording. In fact, as we explained, "the jury heard the *full*

---

of an institutional or prison mail stamp, the date indicated on the certificate of service is presumed to be the date of filing." (emphasis added)), *report and recommendation adopted*, 2010 WL 2079691 (N.D. Fla. May 25, 2010) (Stafford, J.).

recording—and [they] were shown the *full* transcript of that recording as a demonstrative aid[.]" *Id.* at *12 (emphasis in original). We therefore denied Ground One on the merits because we couldn't "blame appellate counsel for having failed to raise a meritless objection to [the State's] citations." *Id.* at *13.

In the Motion to Amend, Forbes contends that we "[o]verlooked the Respondent's 'acquiescence' to the fact that the State 'exceeded' the Fourth District Court of Appeals' Order Denying its 'request to supplement the record by referencing statements and/or materials not a part of the record on appeal,' or what the jury heard." Motion to Amend at 3. Forbes is referring to the State's attempt to supplement the record on appeal with a second transcript of the audio recording—a request the state appellate court denied—and he maintains that the State just ignored this order. *See Forbes*, 2022 WL 17082912, at *11 ("While the case was on direct appeal, the State filed a motion in the Fourth DCA to 'reconstruct and supplement the record on appeal' with [a] second transcript. . . . [T]he Fourth DCA denied the State's motion[.]"). In saying so, though, Forbes simply reiterates his view—which he already advanced in his Petition—that the State improperly relied on portions of the audio recording that weren't admitted for the jury. *See* Motion to Amend at 4 ("[T]he Respondent's lack of restraint regarding adherence to the district court's order is a clear indication that use of statements and/or materials not made available to the jury was needed to persuade the court to rule favorably."). We've already determined that it was "eminently reasonable for the Fourth DCA to have believed that the jury heard the whole recording" because the entire audio recording was played to the jury at trial and was submitted to the Fourth DCA on appeal. *Forbes*, 2022 WL 17082912, at *13. Forbes also grossly misstates the scope of the Fourth DCA's order denying the State's motion to supplement the record. Although the Fourth DCA prevented the State from filing a second transcript of the recording, it *didn't* stop the State from citing to the recording itself—which was an essential piece of evidence the jury heard (in its entirety) at trial. *See ibid.* ("[S]upplementing the record with the

5

demonstrative-aid transcript was unnecessary because the Fourth DCA could simply listen to the recording—the obvious implication being that the jury had heard *everything* that was on that recording." (emphasis in original)). Since Forbes hasn't identified a legal error in our original order—and given that he's just repeated an argument we've already rejected—we won't reconsider our decision to deny Ground One.

### III. Ground Two

Unlike Ground One, we dismissed Ground Two as procedurally defaulted. In his Petition, Forbes admitted that he "[had] never raised Ground Two" before, but he thought he could show "cause and prejudice" under the rubric laid out in *Martinez v. Ryan*, 566 U.S. 1 (2012). *Forbes*, 2022 WL 17082912, at *7. In a nutshell, Forbes argued that his trial counsel had improperly advised him to request a curative instruction—rather than move for a mistrial—after "the State presented [a] video of a police interview, in which Forbes implied that he'd been incarcerated before." *Id.* at *8. Specifically, the jury heard Forbes say "yeah" in response to a question from a detective, who'd asked Forbes whether "your friends know that you have been to prison." Trial Tr. [ECF No. 21-1] at 326.

In our order, we found that Forbes hadn't shown "cause and prejudice" to overcome his procedural default. We first determined that the *Martinez* exception didn't apply at all because "Ground Two doesn't allege a 'substantial ineffective-trial-counsel claim[.]'" *Forbes*, 2022 WL 17082912, at *7 (quoting *Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1260 (11th Cir. 2014)). We came to this conclusion after reviewing the trial transcript—which revealed that trial counsel *had* advised Forbes to move for a mistrial and that counsel only requested a curative instruction *at Forbes's request. See id.* at *9 ("Contra Forbes's position here, defense counsel unambiguously told the court that *he* wanted to move for a mistrial, but that *Forbes* was insisting on going forward with a curative instruction." (emphasis in original)). We also found that, in any event, Forbes couldn't show prejudice because there

6

was no evidence *either* (1) that "the trial judge would've granted the mistrial motion," or (2) that the jury failed to follow the trial court's instruction. *Id.* at *10.

Forbes thinks we made five different errors in dismissing Ground Two. *First*, he says (for the first time), that counsel should've filed a motion in limine to exclude his *entire* police interview because "the sole purpose for which the State Attorney presented video evidence of the interrogation with a detective [was] to prejudice the jury[.]" Motion to Amend at 6. *Second*, he claims that his lawyer didn't properly advise him about *the extent* of the prejudice he'd suffered when the jury heard he might have been previously incarcerated. *See ibid.* ("[D]efense counsel did not advis[e] Mr. Forbes of the critical nature of the 'unfair prejudice' he suffered, as a matter of law, with the introduction of his prior incarceration[.]") *Third*, he speculates that counsel *knew* a curative instruction "would not cure the error[.]" *Ibid. Fourth*, he contends that the trial court's curative instruction "placed undue emphasis on the issue and, therefore, actually cause[d] more harm than the original improper comment." *Id.* at 7. *Fifth*, he insists that, on the issue of prejudice, the trial court *surely* would have granted a motion for a mistrial. *See id.* at 10–11 ("[W]hat counts is whether the judge would have been required to [declare a mistrial] under the applicable law, and, if so, whether doing so would have resulted in a reasonable probability of a different result. The answer is yes, and yes."). We find none of these arguments persuasive.

Beginning with Forbes's first argument, we conclude that Forbes is asserting an entirely new claim—which he just can't do in a Rule 60(b) motion. Forbes's original argument, remember, was that counsel performed ineffectively when he "failed to object to the improper introduction of video evidence which caused counsel to misadvise Petitioner regarding the State's video evidence." Second Amended Petition at 6. Dissatisfied with our resolution of this claim, Forbes now expands counsel's purported error to include an entirely new allegation that counsel should've prevented the jury from seeing *any part* of the police interview. *See* Motion to Amend at 6 ("[T]rial counsel rendered Deficient

7

performance because, after reviewing this evidence pre trial, he should have filed a Motion in Limine prohibiting [the video's] introduction[.]"). He now also insists that the State's sole reason for playing the interview was to introduce to the jury the prejudicial statement at issue here. *See ibid.* ("[T]he sole purpose for which the State Attorney presented video evidence of his interrogation with a detective is to prejudice the jury[.]"). Counsel's (supposed) failure to file a motion in limine—just like counsel's alleged failure to properly advise Forbes about moving for a mistrial—are two separate claims. And the law is clear that Forbes cannot use his Rule 60(b) motion to present claims he's never advanced before. *See Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005) ("Using Rule 60(b) to present new claims for relief from a state court's judgment of conviction—even claims couched in the language of a true Rule 60(b) motion—circumvents AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts.").[4]

And we reject Forbes's second, third, and fourth arguments all together. In these arguments, Forbes again contends that his defense attorney preformed deficiently by advising him to request a curative instruction instead of moving for a mistrial. In essence, Forbes criticizes his lawyer's decision because (in his view) his criminal past was so prejudicial that a "curative instruction would not cure

---

[4] In any event, Forbes's argument is meritless. The trial record reveals that the video of Forbes's interrogation was heavily redacted to avoid references to his criminal history. *See* Trial Tr. [ECF No. 21-1] at 270 ("The Court: The redacted copy is an hour and 27 minutes? [State Attorney:] Yes, I apologize. There was about 40 redactions to do."). Obviously, the State failed to remove *one* of those references. But nothing in the record suggests that this oversight was intentional. *See* Trial Tr. [ECF No. 21-1] at 326–27 ("[State Attorney:] [This is] the redacted copy. The same copy I gave [defense counsel]; the same copy that I gave you. So I don't know why that portion, you can go to prison, is there because there are many times it refers back and forth you could go to prison for this; the redactions that were taken out about him previously being in prison."). Nor would any motion to exclude the entire interview have been successful. The interview, after all, was plainly probative and admissible—since it included several inculpatory statements by the Defendant. *Cf. State v. Martin*, 277 So. 3d 265, 270 (Fla. 3d DCA 2019) ("[J]ust because evidence is detrimental to a defendant's case does not mean that the defendant is unfairly prejudiced." (citing FLA. STAT. § 90.403)).

the error" and because (he says) the instruction only exacerbated the problem by placing "undue emphasis on the issue." Motion to Amend at 6–7.

Two problems with this. *One*, as we've explained (in a portion of our order Forbes conveniently doesn't mention), defense counsel *wanted* to move for a mistrial and *recommended* that Forbes pursue a mistrial *instead of* a curative instruction. *See Forbes*, 2022 WL 17082912, at *9 ("The trial transcript makes clear that, as soon as the State played this video, defense counsel immediately objected and moved for a mistrial . . . . [A]fter [a] brief recess, counsel told the court that his 'recommendation is to move for a mistrial.'" (quoting Trial Tr. [ECF No. 21-1] at 328)). Even after speaking with Forbes, counsel told the trial court that he would still "like a mistrial," but he explained that *Forbes* wanted "to move forward with the trial"—a sentiment Forbes then *confirmed* under oath. *Ibid.* Forbes's continued assertions that *counsel* was the driving force behind the request for a curative instruction is thus thoroughly belied by the record.

*Two*, the comment the jury heard—while not ideal—wasn't *so* egregious that it could only be cured by a mistrial. The Eleventh Circuit has held, in a factually similar circumstance, that a court "did not abuse its discretion by not granting a mistrial based on the portion of the police interview that was inadvertently played for the jury after the government had agreed to redact it. . . . Because [the defendant] was not substantially prejudiced by the brief and isolated reference to the 'first time' he was accused of 'taking some inappropriate pictures,' he was not entitled to relief." *United States v. Grzybowicz*, 747 F.3d 1296, 1311 (11th Cir. 2014); *see also, e.g.*, *Gudinas v. State*, 693 So. 2d 953, 964 (Fla. 1997) ("[W]e agree with the State that the trial judge did not abuse his discretion in denying Gudinas' motion for mistrial . . . . This was an isolated comment which the judge dealt with swiftly and decisively *by issuing a curative instruction*." (emphasis added)); *Ruger v. State*, 941 So. 2d 1182, 1185 (Fla. 4th DCA 2006) ("The comment was brief, isolated, and inadvertent. . . . The trial court sustained the objection and gave a curative instruction . . . . Accordingly, the trial court did not abuse its discretion in denying

9

the motion for a mistrial."). Since both federal and Florida courts have held that an isolated prejudicial comment doesn't automatically trigger a mistrial, counsel acted reasonably in respecting his client's demand for a curative instruction. *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) ("And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").[5] Forbes, in sum, is wrong to say that counsel advised him to request a curative instruction over a mistrial, and he's wrong to insist that his lawyer performed deficiently by acquiescing to his demand. We therefore properly concluded that the *Martinez* exception didn't apply here because the alleged deficiency Forbes has identified—if it happened at all—wasn't "substantial." *See Forbes*, 2022 WL 17082912, at *8 ("A claim is not substantial . . . 'if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief.'" (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1270 (11th Cir. 2014))).

Finally, we reject Forbes's fifth argument—that he's somehow established prejudice. Forbes confidently says that, had defense counsel requested a mistrial, the trial court would have had to grant it under Florida law. *See* Motion to Amend at 10 ("To show prejudice it is usually, though not always, enough that applicable law would have required the trial judge to grant a mistrial if one had been requested."). But that's just not true. The Florida Supreme Court has repeatedly held that "[a] trial court should grant a motion for mistrial only when an error is so prejudicial as to vitiate the entire trial." *Williams v. State*, 209 So. 3d 543, 560 (Fla. 2017). And, again, a single improper comment that "relate[s] to a defendant's prior imprisonment . . . do[es] not always require reversal." *Fletcher v. State*,

---

[5] We're also skeptical of Forbes's suggestion that the curative instruction "cause[d] more harm than the original improper comment." Motion to Amend at 7. As we've said, Forbes hasn't adduced any proof—other than his own speculative beliefs—for his view that, in rendering its verdict, the jury ignored the trial court's curative instruction and considered the improper comment. *See Forbes*, 2022 WL 17082912, at *10 ("And, since we presume that the jury followed the judge's instruction—in which the judge forbade the jurors from considering the officer's statement about Forbes's prior incarceration—no mistrial was necessary." (citing *Lowe v. State*, 259 So. 3d 23, 52 (Fla. 2018)).

168 So. 3d 186, 207 (Fla. 2015); *see also, e.g.*, *Williams*, 209 So. 3d at 561 ("[T]he jury was aware of some criminal history. The statements that occurred . . . were brief; the trial court gave curative instructions after the first two times and the fleeting comments were not the focus of the witnesses' testimony. Accordingly, the trial court did not abuse its discretion in denying a motion for mistrial."); *Cox v. State*, 819 So. 2d 705, 714 (Fla. 2002) ("While the defense may have been chagrined that the jury was informed that the appellant was serving two life sentences due to the defense strategy, this information did not 'vitiate the entire trial.' Therefore, a mistrial was not proper." (cleaned up)). Our conclusion that "there's no indication that the trial judge would've granted the mistrial motion" was thus soundly based in Florida law. *Forbes*, 2022 WL 17082912, at *10.

Since Forbes hasn't identified a "mistake" in our original order, we were right to dismiss Ground Two as procedurally defaulted.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In the context of a Rule 60(b) motion, a COA is only appropriate if "a reasonable jurist could conclude that the District Court abused its discretion in declining to reopen the judgment." *Buck v. Davis*, 137 S. Ct. 759, 777 (2017). Since no reasonable jurists would find that we abused our discretion in denying this Motion to Amend, any request for a COA is **DENIED**.

\*\*\*

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that Forbes's Motion to Alter [ECF No. 53] is **DENIED**. Any request for a COA is also **DENIED**. This case shall remain **CLOSED**.

11

**DONE AND ORDERED** in the Southern District of Florida on February 17, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Denaldo Forbes, *pro se*
counsel of record